[644 NYS2d 108]

In the Matter of Milagros Cuevas, Individually and as Parent of Julissa Rivera and Others, Infants, Petitioner, v Beacon Housing Authority et al., Respondents.

Third Department, June 13, 1996

**APPEARANCES OF COUNSEL**

*Pisanelli & Forman,* Poughkeepsie *(Peter M. Forman* of counsel), for petitioner.

*M. Weldon Brewer,* Poughkeepsie, for respondents.

**OPINION OF THE COURT**

SPAIN, J.

On July 9, 1992 petitioner, seeking to rent an apartment for herself and her five children, applied for subsidized housing from respondent Beacon Housing Authority (hereinafter BHA). On April 7, 1993, when petitioner was interviewed for prospective housing, she sought to include on the lease Enrique Dross, her boyfriend, and her sixth child, a newborn daughter. Thereafter, it was revealed that Dross' daughter Ciara was in Dross' custody; the addition of Ciara to the proposed household composition brought the number of tenants beyond the occupancy standard for the available unit, a four-bedroom apartment. Petitioner then informed BHA that Dross and Ciara would not be joining her household in the available unit. Aware of the possibility that petitioner might be trying to deceive it concerning the household makeup, BHA specifically advised petitioner in a letter dated April 14, 1993 to carefully read her lease and the rules and regulations regarding occupancy which BHA enclosed. Thereafter, on April 26, 1993 petitioner executed the lease with BHA naming only herself and her six children as the occupants.

In September 1993 BHA learned that Dross was reporting petitioner's residence as his residence. Further investigation

revealed that Dross had been observed coming and going from petitioner's apartment in a manner suggestive of occupancy, that Dross was registered to vote from petitioner's apartment and that Dross identified petitioner's apartment as his residence for various other purposes. Petitioner admitted that Dross had a key and was at the premises daily, but denied that he stayed overnight more than two or three times. On October 13, 1993 Dross, who had been warned to stay clear of the property, submitted an application to join petitioner as an occupant of the apartment. On October 19, 1993 BHA issued a notice of termination of the lease based upon petitioner's violations of lease provisions. It was also discovered that petitioner had commenced employment without informing BHA, resulting in an underpayment of rent. Petitioner's employment and income, which had not been reported to BHA, was subsequently verified by investigation; on March 18, 1994 an additional notice of termination of the lease was issued to petitioner.

After the parties had a preliminary conference, an administrative hearing was held. Following the hearing, the Hearing Officer found that petitioner had committed two serious violations of the lease by permitting a boarder to reside in the leased premises without being named in the lease and by failing to report her change in income. The Hearing Officer concluded that each violation represented good cause for terminating the lease and eviction proceedings against petitioner were commenced. Petitioner commenced this proceeding pursuant to CPLR article 78 challenging the Hearing Officer's determination and obtained a stay of the eviction. Petitioner alleged, *inter alia*, that BHA's occupancy and boarder policy violated Real Property Law § 235-f and that the determination was not supported by substantial evidence. Supreme Court, relying upon *420 E. 80th Co. v Chin* (97 AD2d 390), found that the BHA occupancy restriction was void as against public policy; the remainder of the proceeding was transferred to the Appellate Division on the issue of substantial evidence. The matter is before this Court on the petition and on respondents' appeal of Supreme Court's ruling.

■ Initially, we disagree with Supreme Court that BHA's lease provisions concerning boarders and lodgers violate Real Property Law § 235-f. Paragraph 8 (2) of the BHA lease agreement states that the tenant shall not "provide accommodations for boarders or lodgers". Supreme Court ruled that such a restriction in the lease violated Real Property Law § 235-f which prohibits certain restrictions on occupancy (*see*, Real

Property Law § 235-f [2], [3]). However, Real Property Law § 235-f (8) states that the prohibition contained in Real Property Law § 235-f, commonly known as New York's "Roommate Law", shall not be construed "as invalidating or impairing the operation of, or the right of a landlord to restrict occupancy in order to comply with federal, state or local laws, regulations, ordinances or codes" (Real Property Law § 235-f [8]).

BHA is a public housing agency which is funded through and subject to the regulations of the United States Department of Housing and Urban Development (hereinafter HUD). The record reveals that HUD regulations (24 CFR part 966) mandate that leases entered into directly between public housing agencies and their tenants must contain certain provisions (*see*, 24 CFR 966.1, 966.4). Listed under *"Tenant's obligations"* at 24 CFR 966.4 (f) is the following: "The lease shall provide that the tenant shall be obligated * * * (2) Not to provide accommodations for boarders or lodgers" (24 CFR 966.4 [f] [2]).

Notably, the language in the lease (para 8 [2]) is the same as the language in the Federal regulation (*see*, 24 CFR 966.4 [f] [2]). In our view, the lease provisions restricting the occupancy of petitioner's apartment are required by and in compliance with 24 CFR part 966 and, as such, the BHA lease restrictions clearly fall within the exception set forth in Real Property Law § 235-f (8). Among other regulations applicable to BHA with respect to this issue are 24 CFR 960.205 and 960.206, which require public housing agencies to screen prospective occupants and to verify the information supplied. To the extent that any of these HUD requirements are not excepted from Real Property Law § 235-f, the provisions of Real Property Law § 235-f must yield to the Federal regulations in accordance with the Supremacy Clause of the US Constitution (*see*, *Gramercy Spire Tenants' Assn. v Harris*, 446 F Supp 814, 823).

■ We further conclude that the Hearing Officer's determination is supported by substantial evidence. It is clear that Dross, upon his arrest, gave police petitioner's address as his address, that Dross used petitioner's address for the purpose of voter registration and that Dross regularly was at the apartment and had his own key. Further, petitioner admitted that she was employed and failed to timely notify BHA. Petitioner's explanation for her conduct created issues of credibility which were resolved against her; we will not disturb the Hearing Officer's resolution of issues of credibility (*see*, *Matter of Lopez v Constantine*, — AD2d —, —, 1996 NY Slip Op 02323 [3d Dept, Mar. 14, 1996]). We also conclude that eviction is not so

disproportionate to the violations as to be shocking to one's sense of fairness (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 233-234).

We have considered petitioner's remaining contentions and find them to be without merit.

CREW III, J. P., WHITE, YESAWICH JR. and PETERS, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.